IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

TRAVIS HOLLY STEPHENS,

Defendant.

CV 19-29-H-CCL
CR 17-8-H-CCL

Order

Petitioner/Defendant Travis Holly Stephens (Defendant or Ms. Stephens) moves to vacate, set aside or otherwise correct her sentence pursuant to 28 U.S.C. § 2255. (Doc. 78).  This is Ms. Stephens's first § 2255 motion and was timely filed.  The Court subjects her motion to preliminary review and "must dismiss the motion and direct the clerk to notify the moving party" if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  Rule 4(b) of the Rules Governing Section 2255 Proceedings.

Along with her § 2255 motion, Ms. Stephens submitted a "Motion for Discovery, Evidentiary Hearing and Appointment of Counsel," which the clerk filed as an attachment, rather than filing it as a separate motion.  (*See* Doc. 77-4).

The Court nevertheless considers Ms. Stephens's motion for appointment of counsel.

As a general rule, the constitutional right to counsel extends only through a defendant's first appeal. *United States v. Townsend*, 98 F.3d 510, 512 - 513 (9th Cir. 1996) (per curiam). A defendant seeking post-conviction relief under § 2255 is only entitled to appointment of counsel when the court determines that an evidentiary hearing is required. *Id.* (citing Rule 8(c) of the Rules Governing Section 2255 Proceedings). Until and unless the Court determines that a hearing is necessary, there is no need to appoint counsel to represent Ms. Stephens.

In April of this year, Ms. Stephens filed a motion for leave to amend her initial motion. (Doc. 81). Rather than lodging a proposed amended motion, Ms. Stephens "incorporates by reference and realleges [sic] all claims raised in previous pleadings" and asks the Court to consider the partial transcript of her sentencing hearing and her affidavit as supplements to her § 2255 motion. In June, she moved the Court to pre-screen her § 2255 motion or require the United States to file a response (Doc. 85) and in August, she moved to expedite review of her § 2255 motion. The Court grants the motions to amend, for pre-screening and for expedited review and considers Ms. Stephens's affidavit and the entire transcript of her sentencing hearing in conducting its pre-screening.

**Factual Background[1]**

Shortly after midnight on January 25, 2017, officers from the Helena Police
Department answered a call about shots being fired at a Helena motel. When
officers arrived, they found a man lying in the motel's parking lot with a gunshot
wound to his chest. Despite life-saving efforts, the man was pronounced dead at
the scene. The officers questioned Ms. Stephens, who was also in the parking lot.
She identified the dead man as Kenny, someone she had previously dated, and
who she believed was wanted by law enforcement. She explained that he had
come to the motel room she was sharing with Brandon James LeClair[2] and started
a fight, which spilled into the parking lot. She also stated that she believed both
men carried firearms.

A number of other agencies, including the Missouri River Drug Task Force
and the Federal Bureau of Alcohol, Tobacco and Firearms soon joined the
investigation. Investigators searched the hotel room registered to Mr. LeClair,
where Ms. Stephens was also staying. Based on items found in the room, arrest
warrants were issued for both Ms. Stephens and Mr. LeClair.

---

[1] These facts are taken from the pre-sentence report prepared for Ms. Stephens's
sentencing, which is filed in the record under seal. (Doc. 65).

[2] Brandon James LeClair (Mr. LeClair) and Ms. Stephens were both charged in the
indictment filed in this case. The Court may refer to him in this opinion as the co-defendant.

After getting a warrant, investigators searched Ms. Stephens's car. They found her backpack, a loaded handgun, and a pound of methamphetamine.

When questioned after his arrest, Mr. LeClair admitted that he shot the man identified by Ms. Stephens as Kenny and later identified as Kenneth Purcell, Jr. (Mr. Purcell).    Mr. LeClair told investigators that, after the shooting, Ms. Stephens gave him Mr. Purcell's gun and a small gun she owned.  The investigators found the guns in the location described by Mr. LeClair.

Investigators also searched Ms. Stephens's home, after getting a warrant. They found a large gun safe in the basement, but no guns.  They found 12 gauge shotgun rounds and .223 caliber full metal jacket rifle rounds in the kitchen.

## Procedural History

In May of 2017, the grand jury returned a multiple-count indictment against Ms. Stephens and Mr. LeClair. (*See* Doc. 2).  The indictment charged Ms. Stephens in Count I with conspiracy to possess with intent to distribute and distribute methamphetamine, in Count II with knowingly possessing with intent to distribute 50 or more grams of a substance containing a detectable amount of methamphetamine, and in Count III with knowingly possessing a firearm in furtherance of the drug trafficking crime charged in Counts I and II.

/ / /

On May 30, 2017, Magistrate Judge Lynch arraigned Ms. Stephens. CJA counsel John Ferguson appeared with Ms. Stephens and Deputy Federal Defender Michael Donahoe (Mr. Donahoe) was appointed to represent her for all further proceedings. According to the minute entry of the proceeding, Magistrate Judge Lynch explained the pending charges and penalties as well as Ms. Stephens's rights and she indicated her understanding before pleading not guilty to the three counts of the indictment in which she was charged. (*See* Doc. 17, Minute Entry).[3]

The Court entered its scheduling order on June 30, 2017, setting trial for August 7, 2017 and setting the motions filing deadline for July 7, 2017. (*See* Doc. 23). On July 7, 2017, counsel for Ms. Stephens filed an unopposed motion to continue the motions filing deadline and the trial date for sixty days. Counsel explained in his motion that additional time was needed to provide careful attention to several possible pretrial issues, given the voluminous discovery and complexity of the case. (*See* Doc. 25).

The Court granted the motion, continued the pretrial motions deadline until September 5, 2017, and reset trial for October 16, 2017. (Doc. 27). As is its customary practice, the Court set a deadline for motions to change plea or continue

---

[3] Ms. Stephens's co-defendant was also arraigned on May 30, 2017. Judge Lynch appointed CJA counsel Wendy Holton to represent Mr. LeClair.

trial approximately one month later than the deadline for filing other pretrial

motions. Counsel for Ms. Stephens filed her motion to change plea and vacate

trial on September 6, 2017, the day after the deadline for filing other pretrial

motions and the same day that she, her counsel, and government counsel signed

the plea agreement. (*See* Docs. 31 and 32).

The Court vacated the trial date and conducted a change of plea hearing for

Ms. Stephens and her co-defendant on October 17, 2017. During the change of

plea hearing, the Court followed its usual procedure to determine whether Ms.

Stephens was competent to enter a guilty plea by asking her a series of questions,

including whether she was fully satisfied with her counsel's representation.[4] Ms.

Stephens answered the question concerning her counsel in the affirmative.

The Court also received an affirmative response when he asked Ms.

Stephens whether she had received a copy of the indictment and discussed it with

her counsel. The Court nevertheless discussed the three charges against Ms.

Stephens, referencing the mandatory minimum penalties as to each charge.

The Court then went over the terms of the plea agreement in detail,

including the acknowledgment by both defendants that each had individually

---

[4] The undersigned reviewed the minute entry and his former law clerk's notes to refresh his recollection of the change of plea proceeding, as no transcript has been ordered.

joined in an agreement between two or more persons to possess with intent to distribute methamphetamine and to distribute methamphetamine, knowing the purpose of the agreement and intending to help accomplish its purpose and reasonably foreseeing that the offense would involve 50 grams or more of a substance containing a detectable amount of methamphetamine. Ms. Stephens also acknowledged that she possessed a firearm in furtherance of the conspiracy, an acknowledgment referenced by the Court during the plea colloquy.

The Court also explained the guideline calculation process and the government's agreement to recommend a base offense level of 32 as to each defendant and to recommend that the guideline calculation for Ms. Stephens as to the firearm count should be based on USSG § 2K2.4 and not the cross reference listed in USSG § 2D1.1(d)(1).

In going over the terms of the plea agreements, the Court referred to the conditional appeal waiver contained in each defendant's plea agreement. Ms. Stephens agreed that so long as the Court imposed sentence within the calculated guideline range and there was no objection to that range, she could not appeal or collaterally attack her sentence. The Court noted that the one exception available to Ms. Stephens was a claim for ineffective assistance of counsel.

/ / /

After confirming that each defendant understood the terms of the plea agreement, the Court explained the elements and maximum penalties for each offense.  The Court also asked Ms. Stephens whether there were any other agreements not referenced in the written plea agreement and whether the government has used threat to obtain a guilty plea.  Ms. Stephens answered "no" to both questions.  When asked what the government would prove at trial, government counsel summarized the "Anticipated Evidence" section of its previously filed Offer of Proof.  (*See* Doc. 39).  When the Court asked Ms. Stephens whether she agreed with the prosecution's summary as it referred to her, she answered no.  Her counsel then explained that Ms. Stephens disputed four points, while acknowledging that the dispute might not be material.  Ms. Stephens, through counsel, denied giving Mr. LeClair guns and having contact with Mr. LeClair between the third week of December and the third week of January.  Counsel for Ms. Stephens also stated that Mr. LeClair went to Helena on his own and signed for the hotel room.[5]

The Court sought and received confirmation from government counsel that the issues raised by Ms. Stephens were not material because the undisputed

---

[5] Ms. Stephens also registered her disagreement with the government's offer of proof during her presentence interview. (*See* Doc. 65 at ¶ 36).

allegations were sufficient to demonstrate that the government could prove each element of each charged offense. Ms. Stephens agreed that she had no disputes with the offer of proof, other than those explained by her attorney.

After explaining the rights that each defendant was giving up by tendering a guilty plea, the Court confirmed that each defendant still wanted to enter a guilty plea. The Court then found as a matter of fact that each defendant was competent and capable of entering an informed plea, fully understood the nature of the charges and penalties, that each was prepared to tender a free and voluntary guilty plea and that each plea was supported by a factual basis as to each essential element of each crime. Ms. Stephens tendered her guilty plea and the Court remanded her to the custody of the United States Marshall.

Sentencing was originally set for both defendants for January 18, 2018, with a January 11, 2018, deadline for submitting sentencing memoranda and letters regarding sentencing. (Doc. 41). Counsel for Ms. Stephens timely filed a sentencing memorandum and sentencing letters. In the sentencing memorandum, counsel confirmed that he and his client had reviewed the presentence report and there were no outstanding objections to it. (Doc. 51 at 1). Counsel's representation is consistent with the representation of the probation officer who prepared the report and explained in an addendum that Ms. Stephens objected to

two paragraphs of the report and asked that they be stricken. (Doc. 65 at 34). The probation officer revised the report to include Ms. Stephens's objections. (*See* Doc. 65 at ¶¶ 55 and 67).

In his timely filed sentencing memorandum, counsel for Ms. Stephens asked that the Court "seriously consider varying downward" from the advisory guideline range of 87 to 108 months as to Count I, citing a case then recently decided by the United States Supreme Court. (Doc. 51 at 3). Sentencing was continued twice, once due to a conflict on the Court's calendar, and once to accommodate counsel for Ms. Stephens. Counsel for Ms. Stephens filed an additional sentencing letter on behalf of his client prior to the May 1, 2018 sentencing hearing.

In its sentencing memorandum, the government argued for a sentence within the advisory guideline range as to Count I, to be followed by a five year consecutive sentence on the gun count. (Doc. 63 at 6). Government counsel pointed out that Ms. Stephens's base offense level might have been higher if the methamphetamine distributed by Mr. LeClair for Ms. Stephens had been included in the calculation. (Doc. 63 at 3).

As is its usual practice, the Court carefully considered the PSR, the sentencing memoranda filed by all parties and the letters submitted on Ms. Stephens's behalf in imposing sentence. The Court sentenced Ms. Stephens to

108 months (the top of the advisory guideline range) as to Count 1 and sixty

months as to Count 3, to be served consecutively for an aggregate term of 168

months. (Doc. 67 at 2). Her co-defendant was also sentenced to 168 months.

At the conclusion of the sentencing hearing, the Court explained the reasons

for its sentence as follows:

> I want to state for the record the reasons for the sentence.
> And, of course, we do recognize that here, Mr. LeClair's
> methamphetamine supplier was Ms. Stephens. And Mr.
> LeClair was dealing drugs for her, with her being the
> supplier, and him being the recipient and the dealer. She
> did supply LeClair for a period of some months.
> Apparently, she was supplying others, also, judging by
> the drug quantities that she possessed and her other
> conduct. Now, Mr. LeClair does have a serious criminal
> history category. And, of course, that is what is carrying
> the guideline range here today as to him.[6] Ms. Stephens
> demonstrates by her conduct that she also represents a
> serious danger to the public. She did possess a firearm.
> This was a Bersa, .22 caliber pistol, in furtherance of the
> drug crime. Now, she hasn't been charged with other
> criminal conduct. It does appear that even so, she has
> been implicated in assaultive behavior in the recent past.
> She was on GPS monitoring last year. Drove long
> distances around the state; made frequent stops lasting
> about ten minutes each in duration. She traveled to
> residences in Helena, White Hall [sic], Boulder, Butte,
> Stevensville, Garrison, Three Forks, Belgrade, Bozeman,
> Deer Lodge, Missoula, and it goes on here, over a dozen
> different stops. There doesn't seem to be any real

---

[6] Mr. LeClair's total offense level was 31 and his criminal history category was IV, resulting in a guideline range of 151 to 188 months.

explanation for that travel except drug sales. At least, this is the view of the investigators. And this was while on electronic monitoring, after entering in a plea agreement; she did admit to using methamphetamine while in custody. She does have a criminal history category of I. And under the guideline sentencings, the reported and adjudicated criminal history seems to carry a good portion of the weight in setting forth a sentence. She does however, seem to the court to be just as dangerous as Mr. LeClair. And both defendants, the court believes, are a danger to the public. The court has seriously looked at the parity between the two and found that even though the relationship here was the wholesaler being Ms. Stephens, they are quite equal in dangerousness. The drug supplier here is in one sense clearly more culpable than the other. But in any event, the court has determined the sentence that has been rendered in the case. And that is the rationale of the court in finding appropriate sentence for each one and avoiding disparity between the two.

(Doc. 76 at 28 - 31).

In keeping with its usual practice, the Court explained the right to appeal and the time limit for filing a notice of appeal before concluding the sentencing hearing. The Court also explained that the mutual conditional waiver of appeal in the plea agreement of each defendant may have terminated their right to appeal the sentence imposed by the Court. (Doc. 76 at 27 - 28). Ms. Stephens did not file a notice of appeal.

/ / /

**Defendant's Claims**

Ms. Stephens § 2255 motion is premised on three separate but related grounds: (1) her counsel's alleged failure to adequately investigate, challenge and mitigate various sentencing factors; (2) her counsel's alleged failure to challenge the imposition of the 60 month consecutive sentence; and (3) the Court's failure to apply the parsimony principle. (*See* Doc. 77). Ms. Stephens acknowledges in her supporting legal memorandum that she waived her right to appeal or collaterally attack her sentence, except for the right to collaterally attack her sentence based on ineffective assistance of counsel. (Doc. 78 at 2).

In her memorandum, Ms. Stephens argues that her counsel failed to advocate on her behalf by failing to properly investigate and challenge information in her pre-sentence report. (Doc. 78 at 7). She also argues that her counsel failed to file a motion to suppress the drugs and guns found in her car and to file a motion to sever her case from her co-defendant, even though she asked him to do so on several occasions. (Doc. 78 at 8). Finally, she argues that the Court failed to adequately consider mitigating factors, without explaining how that failure can be attributed to her counsel's ineffective assistance. (Doc. 78 at 9 through 12).

Ms. Stephens provides additional facts and argument to support her § 2255 motion in an affidavit filed in April of this year. (Doc. 81-1). Ms. Stephens

Page 13 of 27

argues that her counsel failed to properly investigate discrepancies in the police report concerning the location where the evidence (presumably the gun and drugs found in a backpack in her car) was found, citing the fact that "it said in one report on the passenger seat and in another it says the 'driver's seat.'" (Doc. 81-1 at 3).

Ms. Stephens states she did not want to plead guilty to the gun charge and refused to sign the first plea agreement her counsel mailed to her. Mr. Donahoe came to her about a month after she refused the first plea offer with a second offer and told her it was the final offer before trial and it was in her best interest to accept it. (Doc. 81-1 at 1).

When Ms. Stephens asked why it was in her best interest and how it was different from the earlier offer, Mr. Donahoe explained that the second offer was "virtually the same" as the first offer "except for section 6 of the agreement where the US will recommend that punishment for count III will be calculated pursuant to USSG § 2k2.4 [sic] and not 1D1.1(d)(1)." When Ms. Stephens protested that she was charged in a drug case, not a shooting, Mr. Donahoe told her this was her "assurance that the government won't bring the death into the proceedings." *Id.*

Mr. Donahoe gave his client time to think about the second plea offer, and came back "a few days later." (Doc. 81-1 at 2). According to Ms. Stephens, Mr. Donahoe "pressures me into signing the plea by reiterating that this is their last

Page 14 of 27

and final offer and trial are [sic] not in my best interest.  He went on to say either your [sic] signing the plea or going to trial and I need to know now! Today!!"  *Id.*

Although Ms. Stephens claims that she signed the plea agreement because she felt coerced by her counsel, she declined to follow her counsel's advice and cooperate with the government.  (Doc. 81-1 at 2).  Ms. Stephens claims that her counsel advised her to write a letter accepting responsibility for her conduct, which would reduce her "offense level from 32 to 29 with a strong possibility of receiving a sentence of 5 years the mandatory minimum sentence plus a consecutive five years for the 924(c).  *Id.*  She followed her counsel's advice and sent him a letter accepting responsibility for her actions.  She now regrets sending the letter because it "was very incriminating and had no mitigating effect."  *Id.*

Ms. Stephens noticed "inaccuracies" when she reviewed the pre-sentence report, which she refers to as the "PSI" and blames her counsel for the fact these inaccuracies were not removed from the report.  (Doc. 81-1 at 2).  She argues that Mr. Donahoe's failure to object to those events led the Court to impose a higher sentence, as demonstrated by the fact that the Court relied on those events in explaining the reasons for her sentence. (Doc. 81-1 at 3).

Ms. Stephens also blames Mr. Donahoe for the fact that letters from Mr. Purcell's family were added to the report, even though Mr. Donahoe explained

that it would be up to the Court to decide whether to consider the letters. (Doc. 81-1 at 2). Ms. Stephens believes that she could have prevented the Court from considering Mr. Purcell's death if Mr. Donahoe had moved to separate her sentencing hearing from that of her co-defendant. (Doc. 81-2 at 3). According to Ms. Stephens, Mr. Donahoe refused to make a motion to separate the hearings, telling her that "he was not going to waste his or the [Court's] time." *Id.*

## Discussion – Appeal Waiver

An express waiver of a right to appeal is enforceable where the waiver is knowing and voluntary and the sentence is in accordance with the plea agreement. *United States v. Martinez*, 143 F.3d 1266, 1270-72 (9th Cir. 1998). In this case, the Court personally addressed Ms. Stephens during her plea hearing and described in detail the waiver of appeal rights contained in the plea agreement. Therefore the Court is satisfied that Ms. Stephens's waiver of appeal rights was knowing and voluntary. The Court is also satisfied that Ms. Stephens knowingly and voluntarily entered her guilty plea because the Court followed its usual procedure and complied with the requirements of Rule 11(c)(1) before accepting her guilty plea. *See United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999)(noting that "compliance with Rule 11 is the means by which the court is assured that the defendant's guilty plea is voluntarily and knowingly made.")

Although Ms. Stephens claims she was coerced by Mr. Donahoe into entering a guilty plea, her claim is not supported by her own affidavit.  In her affidavit, Ms. Stephens admits that she rejected the first plea agreement offered and took additional time to consider the second plea agreement offered before agreeing to sign it.  Although Mr. Donahoe explained that he thought it was in her best interest to sign the agreement, he made it clear that she had another option – which was to go to trial.  At most, according to Ms. Stephens's own version of events, Mr. Donahoe pushed her to make a decision so that he could begin his trial preparations.

Ms. Stephens's claim that she was coerced into signing the plea agreement is also contradicted by statements made during her change of plea hearing.  She agreed she was satisfied with her counsel.  She agreed with Mr. Donahoe's statements concerning her dispute with the government's offer of proof.

The Court does not consider only a defendant's words when determining whether a plea is voluntary.  The Court also observes the defendant's demeanor and interactions with counsel during the plea hearing. There was no indication during Ms. Stephens's plea hearing that she did not understand the agreement she had made or that her plea was anything other than free and voluntary.

/ / /

## Discussion – Ineffective Assistance of Counsel Claims

Ms. Stephens reserved her right to collaterally attack her sentence based on ineffective assistance of counsel. A defendant seeking to set aside a judgment based on ineffective assistance of counsel must satisfy the two-part test established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). Ms. Stephens must show: (1) her counsel's performance fell below an objective standard of reasonableness, *id.* at 687 - 688; and (2) that but for those errors, "the result of the proceeding would have been different." *Id.* at 694. The Court need not determine whether counsel's performance was deficient before considering whether the defendant suffered harm as a result of the alleged deficiencies. *Id.* at 697. Nor is the Court required to address both prongs if the defendant makes an insufficient showing as to either. *Id.* The Court begins its analysis by examining each of Ms. Stephens's claims as to her counsel's errors.

### Failure to File Motion to Suppress

Ms. Stephens arguably waived her claim that Mr. Donahoe provided ineffective assistance of counsel by failing to move to suppress evidence by voluntarily entering a guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The Court nevertheless considers this claim in light of Ms. Stephens's allegation that Mr. Donahoe pressured her into pleading guilty.

Page 18 of 27

According to Ms. Stephens, she asked Mr. Donahoe to file a motion to suppress the evidence seized from her car on the basis of conflicting reports as to whether the evidence was located on the driver's side or passenger side of the car. To prevail on an ineffective assistance of counsel claim based on failure to file a motion to suppress, Ms. Stephens must meet both prongs of the *Strickland* test and must also establish that her Fourth Amendment claim has merit. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). According to the pre-sentence report, the investigators obtained a warrant before searching Ms. Stephens's car.

Conflicting reports regarding the location of evidence is not sufficient to call for the suppression of evidence found pursuant to a validly obtained warrant. It was objectively reasonable for Mr. Donahoe to refuse Ms. Stephens's request that he file a motion to suppress when there were no grounds for filing such a motion.

### Deficient Advice Concerning Plea Agreement & Entry of Guilty Plea

Although Ms. Stephens does not explicitly argue that her plea was involuntary as a result of Mr. Donahoe's ineffective assistance, she argues that he persuaded her to sign by telling her that she could get a sentence as low as ten years. The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Page 19 of 27

Criminal defense counsel are expected to provide accurate information when counseling their clients as to the possible consequences of entering a guilty plea. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986). In *Iaea*, the Ninth Circuit held that "[t]hough a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys." *Id.* Iaea's counsel advised him that "he was subject to Hawaii's minimum sentencing law, that there was almost no chance of his receiving an extended or life sentence, and that he had a chance to receive probation if he pled guilty." *Id.*

Defense counsel's advice to her client in *Iaea* was patently wrong. The version of Hawaii's minimum sentencing law in effect at the time of Iaea's crime did not apply to him and the prosecutor's promise not to ask for its application as part of the plea agreement did not benefit Iaea. *Id.* Defense counsel knew that the prosecutor intended to "press for extended sentencing." Her statement that "there was almost no chance of [her client] receiving an extended or life sentence" *id.*, was not just an "inaccurate prediction" it was a "gross mischaracterization of the likely outcome" and met the first prong of the *Strickland* test.

Page 20 of  27

The Court has carefully reviewed the entire record in this case, including all of the materials presented by Ms. Stephens. The Court finds no evidence that Mr. Donahoe's conduct during the plea negotiation process fell below an objective standard of reasonableness. After Ms. Stephens rejected the government's first plea offer, Mr. Donahoe negotiated another agreement, which added the government's commitment not to seek application of the cross-reference to USSG § 2D1.1(d).[7] Telling Ms. Stephens that there was "a strong possibility" that she could be sentenced to only ten years (five years on Count I and five consecutive years on Count III), (Doc. 81-1 at 2) was inaccurate and overly optimistic, but not a "gross mischaracterization of the likely outcome." *See Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007)(rejecting state habeas petitioner's argument that "his counsel's advice that his guilty plea was his 'best chance' of him receiving thirty to forty years was a 'gross mischaracterization of the likely outcome,' given the fact that he was sentenced to eight terms of life without parole."). The Court sentenced Ms. Stephens to an aggregate term of 168 months or fourteen years. Mr. Donahoe's prediction was off by four years, but was not below the level of competence expected of criminal defense attorneys.

---

[7] Had the cross-reference been applied, the base offense level for Ms. Stephens could have been 43, rather than 32, as negotiated by her counsel.

Page 21 of 27

Even if the Court were to find that Mr. Donahoe's performance was somehow ineffective, it could not grant the § 2255 motion because Ms. Stephens cannot show that she was prejudiced by his inaccurate prediction. The Court referenced the maximum penalties for the crimes to which Ms. Stephens was pleading near the beginning of the plea hearing. After explaining the elements of each crime, the Court again explained that Ms. Stephens faced a minimum of five years and a maximum of forty years as to Count I and a minimum of 5 years to life as to Count III. Ms. Stephens confirmed that she understood the possible penalties. A defendant that is clearly informed of a potential life sentence cannot demonstrate that she was prejudiced by her counsel's prediction of a lower sentence. *Womack*, 497 F.3d at 1003. Ms. Stephens chose to enter her guilty plea knowing that her potential maximum sentence as to Count I was forty years and that she faced a potential life sentence as to Count III. She cannot demonstrate that she was prejudiced by her counsel's telling her that there was a good possibility she would be sentenced to only ten years.

Deficiencies During Sentencing Process

Many of Ms. Stephens's complaints about Mr. Donahoe involve conduct that occurred after she tendered her guilty plea. To establish ineffective assistance of counsel during the penalty phase of a case, a defendant must demonstrate that

Page 22 of 27

her counsel's performance was deficient and that she was prejudiced by that deficiency. *Runningeagle v. Ryan*, 686 F.3d 758, 778 (9th Cir. 2012).

Ms. Stephens argues that Mr. Donahoe's refusal to file a motion to separate her sentencing hearing from that of her co-defendant constitutes ineffective assistance. It is clear from Ms. Stephens's affidavit that Mr. Donahoe made a strategic decision – he refused to file the motion because doing so would have been a waste of both his time and the Court's time. When a criminal defendant questions his counsel's strategic decisions, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.

As a general rule, properly joined defendants "have no constitutional or statutory right to separate sentencing proceedings." *Runningeagle*, 686 F.3d at 778. In the federal system, however, sentencing courts are required to calculate the guideline range separately for each defendant "and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors." *Nelson v. United States*, 555 U.S. 350, 351 (20009) (per curiam).

It has long been this Court's practice to sentence co-defendants in a single hearing, even in cases involving far more defendants than the two defendants in

Page 23 of 27

this case. Even if the defendants had been sentenced separately, the Court would have considered all of the facts in the pre-sentence report for Ms. Stephens in imposing her sentence, which included her involvement in the death of Mr. Purcell.

Ms. Stephens argues that Mr. Donahoe failed to object to certain inaccuracies in her presentence report. She specifically references two separate assaults on two separate occasions on the same person. (Doc. 81-1 at 2). The Court has determined that Ms. Stephens is referring to paragraphs 68 and 69 of the presentence report. Ms. Stephens is correct that no objection to the inclusion of either paragraph in the presentence report was made on behalf of Ms. Stephens. Mr. Donahoe's failure to register an objection is somewhat perplexing, given the fact that he did object to the inclusion of two other paragraphs in the presentence report. (Doc. 65 at 34).

Mr. Donahoe's failure to object to the inclusion of paragraphs 68 and 69 in the presentence report did not prejudice Ms. Stephens. This Court recognizes that every defendant is entitled to be sentenced based on accurate information and that a district should only consider information that is both relevant and reliable when sentencing a defendant. *United States v. Alvarado-Martinez*, 556 F.3d 732, 735 (9th Cir. 2009) (per curiam). The Court considered the assaults described in

Page 24 of  27

paragraphs 68 and 69 of the presentence report because they were evidence that Ms. Stephens's criminal history score of zero did not accurately reflect her danger to the community. The information in those paragraphs was drawn from law enforcement reports prepared by the Butte Silver Bow Law Enforcement Department. It is not error for a sentencing court to rely on an investigative report in making a sentencing decision. *United States v. Burns*, 894 F.2d 334, 337 (9th Cir. 1990). Had Mr. Donahoe objected to paragraphs 68 and 69, the Court would have overruled his objections.

Ms. Stephens's final argument concerning her sentencing is directed at the Court, rather than Mr. Donahoe. She argues that the Court denied her due process rights by failing to consider the "parsimony doctrine." As discussed above, Ms. Stephens knowingly and voluntarily waived her right to appeal or collaterally attack the judgment against her on any grounds other than ineffective assistance of counsel in her plea agreement. The Court nevertheless addresses this issue.

The undersigned was appointed to serve as a United States District Judge for the District of Montana before the guidelines became effective and assumed senior status shortly before the United States Supreme Court decided that the guidelines were advisory rather than mandatory. This Court has sentenced criminals under three different sentencing regimes and is aware of its obligation to

calculate the guideline range separately for each defendant and impose a sentence

sufficient, but not greater than necessary, for each defendant in light of the

statutory sentencing factors.  That is precisely what the Court did in this case, as

fully set forth in the statement of reasons given after the Court imposed sentence.

## CONCLUSION & ORDER

The Court has carefully considered the entire record in this case, including

all of the documents filed by Ms. Stephens, and has determined that counsel for

Ms. Stephens met his obligation to provide effective assistance throughout the

criminal proceeding that led to imposition of the judgment against her.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's § 2255 motion (Doc. 77) is
**DENIED.**

The Court having considered the documents submitted by Defendant with

her motion to amend, **IT IS FURTHER ORDERED** that Defendant's motion for

leave to amend (Doc. 81) is **GRANTED**.

The Court having conducted its preliminary review and determined that no

response from the United States is required, **IT IS FURTHER ORDERED** that

Defendant's motion for preliminary review and order directing the United States to

respond (Doc. 85) is **GRANTED** to the extent Defendant seeks preliminary

Page 26 of 27

review and **DENIED** to the extent Defendant seeks an order requiring the United States to respond.

**IT IS FURTHER ORDERED** that Defendant's motion to expedite review (Doc. 91) is **DENIED** as moot.

The record before the Court, even when considered in the light most favorable to Defendant, does not meet the standard required for a certificate of appealability because Defendant has not made a substantial showing that she was denied a constitutional right. A certificate of appealability is therefore **DENIED.**

The Clerk of Court is directed to close CV 19-29-H-CCL by entering judgment in favor of the United States and to notify Defendant of entry of this order.

Dated this _23rd_ day of September, 2020.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE

Page 27 of 27